15905

**BRISSIE v. SOUTHERN RY. CO.**

(41 S. E. (2d) 97)

*Messrs. Frank G. Tompkins,* of Columbia, and *P. A. Bonham,* of Greenville, for Appellant,

*Messrs. W. H. Nicholson, W. H. Nicholson, Jr.,* and
*A. R. McElhaney,* all of Greenwood, for Respondent,

*Messrs. Frank G. Tompkins,* of Columbia, and *P. A. Bonham,* of Greenville, for Appellant,

January 14, 1947.

Mr. Associate Justice Taylor delivered the unanimous opinion of the Court.

This case comes to this Court by way of the Court of Common Pleas for Greenwood County where the action was commenced by the service of Summons and Complaint upon the defendant for the negligent and willfull killing of the plaintiff's intestate by the defendant on the 13th day of July, 1945, the action being brought under the Lord Campbell's Act for the benefit of the father and mother, brothers and sister of the deceased.

The specifications of negligence set out in the complaint are:

"(1) In operating the said engine and train of cars at a high, dangerous and reckless rate of speed;

"(2) In failing to keep a proper lookout on the said engine and in failing to give any notice or warning whatever of the approach of the said engine and train of cars to plaintiff's intestate;

"(3) In operating said engine and train of cars at a high and reckless rate of speed along that portion of its right-of-way where the public habitually used as a walkway and as a licensee.

"(4) In failing to blow the whistle or ring the bell or give proper signals on approaching the crossing near which plaintiff's intestate was killed.

"(5) In operating the said engine with dim and insufficient headlights."

The defendant by its answer entered a general denial and that death of the plaintiff's intestate was due to his own contributory negligence and willfullness.

When plaintiff first closed his case, defendant moved for a nonsuit on the grounds that the evidence failed to establish actual negligence or willfullness on the part of the defendant; but on the other hand, did establish that the deceased came to his death by his own contributory negligence and willfullness, which motion was refused by the Court but reserved the right under Rule 79 of the Circuit Court Rules to grant judgment for the defendant *non obstante veredicto*. The defense then announced that it did not care to offer any testimony, whereupon the plaintiff at this point asked permission to reopen the case for the purpose of offering further testimony, and was allowed to do so over defendant's objection. Whereupon he offered two additional witnesses, one of whom was the engineer in charge of the train.

At the conclusion of this additional testimony, the defense renewed its motion for a nonsuit and directed verdict

on the same grounds as formerly stated and the Court ruled as previously.

The case having been submitted to the jury and a verdict rendered in favor of the plaintiff for Three Thousand ($3,000.00) Dollars actual damages, the defense moved for a judgment in favor of the defendant *non obstante veredicto* which was overruled by His Honor's Order dated June 15, 1946. Hence this appeal.

An examination of the Transcript of Record shows that plaintiff failed completely to prove Items 1, 3, 4 and 5 of his specifications of negligence, but contends by reason of the holdings of this Court in *Sentell v. Southern R. R. Co.*, 67 S. C. 229, 45 S. E. 155; *Wilson v. Southern R. R. Co.*, 93 S. C. 17, 75 S. E. 1014; *Hayes v. Atlantic Coast Line R. R. Co.* 196 S. C. 386, 13 S. E. (2d) 921; and *Leppard v. Southern R. R.*, 174 S. C. 237, 177 S. E. 129, there is sufficient evidence to go to the jury on the question of specification 2, in that defendant failed to keep a proper lookout on the said engine and failed to give any notice to plaintiff's intestate or warning of the approach of the engine and train.

In the *Wilson case, supra,* the deceased had been drinking heavily and was lying in a helpless state on a straight stretch of track owned by the defendant railway company; the night was bright and nothing to obstruct the view, and the Court said:

"Let us even assume that he was a trespasser, and was killed while lying on the railroad track, in a drunken and helpless condition, it does not, however, necessarily follow, that the defendant could run over him with impunity. * * * The rule in such cases, is thus stated in a note to *Central R. R. v. Vaughan,* 30 Am. Rep. at page 54 by Mr. Freeman, and quoted with approval in *Smalley v. Ry.,* 57 S. C. 243, 35 S. E. 489, and *Haltiwanger v. Ry.,* 64 S. C. 7, 41 S. E. 810: 'The true principle it is conceived, is, that the engineer should see that the track is clear; but that when

an obstruction is perceived, the proper course to adopt, will depend upon whether it is a living or inanimate object, whether it is an intelligent human being, under ordinary circumstances, of discerning the means of securing safety, or a brute which has no guide but mere instinct. If the object seen is an intelligent human being, it seems to be generally agreed, that the engineer has the right to presume, that he will get out of harm's way, before the engine reaches him, and that it is not negligence to act upon that presumption.' In the case of *Sentell v. Ry.*, 70 S. C. 183, 49 S. E. 215, the Court uses this language, in regard to a trespasser: 'It makes no difference if the trend of the testimony was, that Sentell was a naked trespasser, the defendant owed him a duty, viz., that he should not be treated by the defendant, without some regard to the dictates of humanity. There was positive testimony that the engineer could have seen Mr. Sentell in plenty of time, to have stopped the train, before reaching him and thus have saved his life. All in all, there was plenty of testimony to show negligence.' "

In the *Leppard case* there was nothing to obstruct the view; in fact there was evidence to the effect that the fireman saw the deceased, but thinking the object an inanimate one did not notify the engineer in time to stop.

In the *Hayes case, supra,* the deceased, as in the *Leppard case,* was lying in full view in an apparent helpless condition in the daytime.

The facts in these cases are entirely different from those in the instant case. There is no evidence whatever of illness or drunkeness. Deceased was let out of the car of Ed Shirley, who brought him home from work, at the crossing which was immediately in front of the home of the deceased and he was therefore not using the right-of-way as a means of travel, but apparently sat down near the place where he left the car instead of proceeding to his home a few yards distant. Another witness testified that he lived in the immediate vicinity and that some twenty or thirty minutes before the train came by, he saw someone whose description

answered to that of the deceased, sitting on the track near where the deceased was struck.

The engineer was placed upon the stand by plaintiff and therefore became his witness and plaintiff is bound by his testimony, which is to the effect that the incident occurred at approximately 11 o'clock at night; that when he saw the deceased, he was lying upon the tracks just beyond a crossing which had been built up for the purpose of vehicular traffic, in the absence of which he could have seen the deceased lying down for a distance of one hundred fifty (150) feet to two hundred (200) feet, but because of this elevation he was able to see him only about fifty (50) feet; that he was not required to blow for this crossing but was in the act of doing so and ringing the bell for another when he noticed this slight movement on the tracks about fifty (50) feet away and immediately beyond this crossing; that the train was moving at approximately thirty-five (35) to forty (40) miles per hour at the time. He immediately applied the emergency brakes and the train stopped with the body opposite the sixth coach, it having been thrown approximately ten (10) feet.

This testimony being undisputed and binding upon the plaintiff, this Court is of the opinion that the plaintiff failed to produce any evidence of negligence on the part of the defendant, and that the motion for a directed verdict in favor of the defendant made at the conclusion of all the testimony, should have been granted, and it is so ordered.

Judgment reversed.

In view of the foregoing, the other questions raised in this appeal become academic.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.