ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY, a corporation,
Plaintiff,

v.

Curlee WILEY, Earnest Gilmore, Johnnie
Davidson, Jr., and Thomas Belvin,
Defendants.

Civ. A. No. AC–1679.

United States District Court
D. South Carolina,
Columbia Division.

March 21, 1966.

Robinson, McFadden & Moore, Colum-
bia, S. C., for plaintiff.

E. W. Mullins, Jr., of Nelson, Mullins,
Grier & Scarborough, Columbia, S. C.,
Edward E. Saleeby and James E. Her-
ring, Hartsville, S. C., for defendants.

HEMPHILL, District Judge.

Plaintiff seeks declaratory judgment
pursuant to provisions of 28 U.S.C. sec-
tion 2201, which reads:

> In a case of actual controversy with-
> in its jurisdiction, except with respect
> to Federal taxes, any court of the
> United States, upon the filing of an
> appropriate pleading, may declare the
> rights and other legal relations of any
> interested party seeking such declara-
> tion, whether or not further relief is
> is or could be sought. Any such de-
> claration shall have the force and ef-
> fect of a final judgment or decree and
> shall be reviewable as such.

Plaintiff attached to its Complaint notice
of a motion to have the United States
District Court enjoin the other defend-
ants from prosecuting action(s) against
defendant Wiley in the Common Pleas [1]
Court of Lee County, South Carolina. No
action was taken on the motion.

On February 12, 1964, plaintiff issued
its garage automobile liability policy

---

1. The United States District Courts in
South Carolina have been flooded, of
recent date, with similar motions in-
cidental to similar actions, apparently in
lieu of using the State trial courts au-
thority, specified in 2 S.C.Code Ann. § 10–
2002 (1962).

number 266JV1564 to Jordan's Motors, Bishopville, South Carolina, insuring Jordan's Motors and person using its automobiles with the permission of its officers and/or agents from liability for personal injury and property damage under the terms and conditions thereof. The pertinent provision of the policy is the omnibus clause which is contained under the definition of "insured".

(3) (a) any person while using, with the permission of the Named Insured, an automobile to which the insurance applies under paragraph 1(a) or 2 of the Automobile Hazards, provided such persons actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

The automobile involved was a 1955 Plymouth four-door sedan, Serial No. P 27 22241968, South Carolina License No. D–6121, registered at the time in the name of Jordan's Motors.

On January 10, 1965, defendant Wiley was driving the Plymouth on State Highway No. 39 in Lee County with defendants Gilmore, Bevin and Davidson as passengers. Gilmore has sued Wiley, in a tort action, for $50,000 [2]; the others await this decision. If the passengers prevail against Wiley, it is acknowledged they will seek collection of Jordan, and plaintiff here will be called on for payment by way of indemnity. Plaintiff therefore seeks decision of this Court favoring its contention that the Plymouth, at the time, was being used *without* the permission which would insure coverage under the policy clause hereinabove quoted.

The credible evidence convinces the Court of the following facts:

1. Jordan Motors, an authorized Ford Dealer in Bishopville, is a partnership with H. H. Jordan and his mother being the principals. Jordan as manager actually conducts all business matters of the company. The business is located on Main Street in the Town of Bishopville and consists of one building together with an adjoining vacant lot used for the parking of the used cars Jordan has for sale. The vacant lot fronts on Main Street from which leads a driveway without a fence or chain across it.

2. The Plymouth was placed on Jordan's used car lot for sale at a price of $250.00. On Saturday, January 9, 1965, at approximately 2:30 P.M., defendant Wiley came to Jordan Motors, looked at this automobile and expressed an interest in buying it. Jordan was the only person on duty at the time. Wiley wanted to drive the car and, although Jordan usually required that an employee accompany a prospective purchaser, he told Wiley he could drive the car for a short distance.

3. Wiley did not return and about 5:00 o'clock in the afternoon Jordan and two of his Negro employees began looking for him. They left word at several places for Wiley to bring the car back. At approximately 6:30 P.M., Wiley brought the automobile to Jordan's home.

4. Jordan's wife was in the hospital and one daughter was in bed with the flu and another daughter was recovering. When Wiley arrived at his home, Jordan was in the process of cooking supper for the family on an outdoor grill. Wiley said he didn't have the $50.00 down payment and Jordan told him he could not have the car unless he paid at least $125.00 down. Wiley said he could not get the money until Sunday and Jordan told Wiley to park the automobile in the used car lot and that he would go down after supper and get the key. He told Wiley that if he raised the $125.00 on Sunday to bring it to him after church and he would let Wiley have the car and finance the balance although he, Jordan, did not usually do business on Sunday.

5. Jordan became ill during supper and went to bed. Because of the illness, concern for the car played no part in his activities until Monday morning when he was called about the wreck

---

2. In excess of minimum: 28 U.S.C. § 1332.

on Sunday afternoon heretofore referred to.

6. Wiley, only witness for defendants, testified Jordan, at his home on Saturday evening, let him have the car until Sunday afternoon. The Court does not find this testimony credible under all the facts and circumstances here, and the inferences to be drawn thereof.

The language of the policy is such that Wiley is an additional insured under its terms only if he had permission to continue using the automobile the use being made of it at the time and place of the accident was within the scope of the permission granted. The cases construing similar omnibus provisions clearly indicate that the permission or consent, and those words are used interchangeably, may be either express or implied. Implied permission is birthed where there has been a course of conduct between the parties, usually an employer-employee relationship, which gives rise to an implication that the present use of the automobile is with the permission of the named insured. In the instant case there has been no prior connection between Jordan and Wiley; therefore, if Wiley is to be considered an additional insured under the terms of this policy, it must have appeared from the evidence that he had the express permission of Jordan to be where he was at the time of the accident. It does not so appear.

Under the law applicable to the facts in this case express permission for a given purpose does not imply permission for all purposes or for another purpose. To bring a person within the terms of the omnibus provision as an additional insured, it must be determined that at the time and place of the accident the person was within the scope of the permissive use. This point is clearly illustrated in the South Carolina case of Eagle Fire Company of New York v. Mullins, 238 S.C. 272, 120 S.E.2d 1 (1961). In that case, a declaratory judgment action, the insurer sought a determination that the son of a salesman for a used car dealer was not an additional insured under the policy of the dealer when he was in a wreck while driving an automobile owned by the dealer on the way to Myrtle Beach. The court found from prior conduct that there could have been implied permission of the used car dealer to allow the son to use the car to drive his father to work and to drive it to school, but that there was no permission for the son to drive the car from Spartanburg to Myrtle Beach. The court held:

> Some courts have held that where the named insured has given express permission to another person to use the automobile for a particular purpose, a policy clause such as is here involved affords indemnity to such person while operating the automobile for a purpose and at a place not within the contemplation of the named insured when he delivered the automobile to such person. (Citations omitted). Others hold, more soundly, we think, that consent should be considered as limited to the purpose for which it was given. (Citations omitted). These conflicting views were discussed, and our adherence to the latter was declared, in the recent case of Rakestraw v. Allstate Ins. Co., [238] S.C. [217], 119 S.E.2d 746.

In *Rakestraw* the named insured, an individual, had left her automobile with a filling station operator, McKinney, to sell. McKinney turned the car over to plaintiff and told plaintiff to take the car, paint it, and return it to the filling station. Plaintiff testified that he took the car to his home to paint and that the next day he was driving his wife to her mother's house in the automobile before taking it to another person's garage to finish painting it. The Court held that permission to take the car home, paint it, and return did not amount to permission to drive anywhere else. From the court's language we excerpt:

> The appellant had express permission from Paul M. McKinney to take the car in question to his home, paint it, and deliver it back to McKinney. He was given express permission to make only two trips in the insured

automobile, one was to drive the car to his home, and the other was, after he had painted it, to drive it back to the filling station where he had obtained possession of it. The appellant was injured at a time when he was operating the insured automobile in violation of the express permission given to him as to its use and operation.

■ *Rakestraw* is authority for the position that regardless of initial permission to drive an automobile, if, at the time and place of the accident, the vehicle was being driven in violation of that permission, the driver is not an additional insured under the omnibus provision, in the absence of implied permission to vary from the stated mission.

The principle referred to above is followed by the United States Fourth Circuit Court of Appeals. In Williams v. Travelers Ins. Co., 265 F.2d 531 (4th Cir. 1959), the person sought to be established as an additional insured under a garage liability policy was a mechanic for Hood Autos, Inc. He was instructed to take an automobile on which he was working home with him and to test drive it that night and the next morning. That night, with his wife, children and a friend in the car, he drove from his home to his father's house, a distance of approximately 26 miles, and on his way home an accident occurred. The court held that this was not a permissive use under the (policy's) omnibus provision, observing that:

> It is well established in this circuit and elsewhere that a person who is given permission to drive an automobile for a limited purpose does not fall within the scope of the omnibus clause, so as to be within the meaning of the term "insured", when he goes beyond the permissive use and drives the car for purposes of his own.

In Continental Cas. Co. v. Padgett, 4 Cir., 219 F.2d 133, the court applied the applicable law in the following language:

> The language of the omnibus clause, which brings within the coverage of

the policy any one who uses the insured vehicle with the permission of the assured, is clear enough. Equally clear is the undisputed testimony that Taylor was given permission to use the car for a specific purpose for his own convenience after business hours on a particular Saturday, and that after this purpose had been served, he was to park the car at a designated spot so that it might be available on Monday morning for the purposes of his employer. All this he did and thereby his use went to the full extent of the permission; but thereafter he violated his instructions, removed the car from the parking place and made use of it, not in the business of his employer but for the pleasure of himself and his friends. It is plain, unless the words of the contract are distorted from their clear and normal meaning, that the fatal ride was not made with the permission of the insured within the meaning of the policy.

■■ A recent South Carolina decision, Crenshaw v. Harleysville Mutual Cas. Co., 144 S.E.2d 810 (1965), involved facts similar to those involved here, although an employer-employee relationship case. An employee of an exterminating company had been permitted to drive the truck containing exterminating equipment home for safe keeping. Thursday night was the first night this had been done and on Saturday night this employee was involved in an accident 20 miles from his home. The court found that the employee had no permission to drive the truck at the location of the accident. The court held as follows:

> "Permitted use of a motor vehicle, which will extend coverage of a liability policy under the omnibus clause, must originate in the language or the conduct of the named insured or of someone having authority from him to extend such permission." See: United States Fidelity & Guaranty Co. v. Mann (4th Cir. S.C.) 73 F.2d 465.

*Crenshaw* is further authority for the rule:

" * * * one who relies upon this[3] clause of an automobile insurance policy has the burden of establishing that the particular use to which the vehicle was being put at the time of the injury was with the permission of the named insured, express or implied."

The Complaint and Answer join as principal issue hereof the application of the policy provision known as the omnibus clause. The testimony presents the facts pertinent to interpretation of the law in such cases. Defendants have not produced credible facts sufficient to sustain their burden of proof under Crenshaw.

No one of defendants is entitled to recover from plaintiff under the terms of the policy.

The Clerk shall enter appropriate order of judgment for plaintiff. Costs are taxed accordingly.

And it is so ordered.

3. Omnibus or extended coverage of automobile policy.